**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  (973) 645-4693
BANKRUPTCY JUDGE  Fax: (973) 645-2606

**NOT FOR PUBLICATION**

FILED
JAMES J. WALDRON, CLERK

**DEC. 7, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

December 7, 2010

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Norris McLaughlin & Marcus, P.A.
Gary N. Marks, Esq.
721 Route 202-206
P.O. Box 5933
Bridgewater, New Jersey 08807-5933
*Former Counsel for Debtor*

The Law Office of Karen DeSoto
Karen F. DeSoto, Esq.
1 Washington Valley Road
P.O. Box 408
Pluckemin, New Jersey 07978
*Counsel for Debtor-Defendant, Pro se*

Maciag Law, L.L.C.
Thaddeus R. Maciag, Esq.
991 Route 22 West, Suite 200
Bridgewater, New Jersey 08807
*Counsel for Defendants Joseph Olszewski, Tuscany Bistro, Inc., and American Tuscany Bistro, Inc.*

Re:   **Karen F. DeSoto, Debtor**
      **Case No. 05-29744 (DHS)**
      **Catherine E. Youngman v. Karen F. DeSoto, *et al*.**
      **Adv. Pro. No. 07-01774 (DHS)**

Page 2
December 7, 2010

Dear Counsel:

Before the Court are two motions by the debtor-defendant, Karen DeSoto ("Debtor"), seeking an Order (1) requiring Norris McLaughlin & Marcus, P.A. ("NMM"), her former counsel, to disgorge fees collected in this case due to a conflict of interest, and (2) to hold NMM in contempt for failing to comply with an Order by this Court on March 1, 2010 ("March 1st Order"), which compelled NMM to provide an accounting of fees to the Trustee's attorneys. For purposes of clarity and efficiency, the Court will refer to these two motions as a single application. The Debtor relies on 11 U.S.C. §§ 327 and 328 in support of her motion for disgorgement.

In its opposition papers, NMM argues that §§ 327 and 328 do not apply and that there was no conflict of interest, as defined under the New Jersey Rules of Professional Conduct ("RPC") 1.7 and 1.8. Furthermore, NMM argues that it is not in contempt of the March 1st Order because that Order directed NMM to provide an accounting to the Trustee's attorneys, not to the Debtor, and the Trustee subsequently relieved NMM of this obligation.[1] NMM also argues that the Debtor lacks standing to bring the contempt motion.

In reply, the Debtor argues that the proper standard for disgorgement of fees in this case is the mere appearance of impropriety or potential conflict. Still relying on § 327, the Debtor asks the Court to adopt what would amount to a *per se* rule of disgorgement where there is a failure to disclose factual circumstances rising to that minimal definition of "conflict." With regard to the contempt issue, the Debtor argues that she is a "party in interest" because she joined in the Trustee's Motion to Compel an Accounting and, therefore, has an independent right to an accounting.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

### STATEMENT OF FACTS

**I.    Debtor's Statement of Facts**

The Debtor filed for chapter 7 bankruptcy relief on June 14, 2005. Her petition was prepared and signed by Robert L. Schmidt ("Schmidt") of NMM, who remained the Debtor's primary attorney in the bankruptcy case and associated adversary proceedings. The Debtor

---

[1] The records in issue had been produced to the Debtor at the time of oral argument on the motions. (Cert. of Padraig P. Flanagan, Ex. H) ("Flanagan Cert.")

Page 3
December 7, 2010

received a discharge on July 26, 2006. In all, NMM served as the Debtor's counsel from June 14, 2005 until the summer of 2009. Schmidt also participated in the present adversary proceeding brought by the chapter 7 Trustee, Catherine Youngman, alleging a fraudulent transfer, which was settled in February 2010.

### A. The 2002 Shareholder Litigation

The alleged conflict arises from a state court shareholder action filed in the year 2000 in which the plaintiff sought a determination of ownership in connection with a restaurant, the Tuscany Grill, of which the Debtor was a twenty-five percent (25%) owner. (Debtor's Application in Supp. of Mot. to Disgorge, p. 2 ¶¶ 3-4) ("Disgorgement App.") The plaintiff in that case was represented by the law firm of Teich Groh Frost & Vindler ("Teich Groh"). (*Id.* at ¶ 5) In 2002, Robert Schmidt ("Schmidt"), then employed as an associate at Teich Groh, participated in the representation of the plaintiff against the Debtor. (Disgorgement App., p. 3 ¶ 9) Specifically, Schmidt signed a brief in connection with the shareholder dispute. (Cert. of Robert L. Schmidt in Opp'n to Debtor's Mot. for an Order Disgorging Fees, ¶ 8) ("Schmidt Cert.")

The parties settled the dispute in August 2002, pursuant to which the Debtor transferred her interest in the restaurant to her husband, Joseph Olszewski ("Olszewski"), and Olszewski bought out the remaining shareholders. (Disgorgement App., p. 2 ¶¶ 6-8) It was this transfer of the Debtor's interest in the restaurant that formed the basis of the Trustee's claims in the adversary proceeding before this Court.

### B. The 2004 Insurance Litigation and the Adversary Proceeding

In 2004, the restaurant, then solely owned by Olszewski and having been renamed Tuscany Bistro, Inc., was destroyed by a fire. (*Id.*) Thereafter, Olszewski formed American Tuscany Bistro, Inc. and rebuilt the restaurant at the same location using personal funds. (*Id.*) Tuscany Bistro, Inc. also made a claim for fire damages with its insurance carrier, Sirius American Insurance Company ("SAIC"), which was eventually denied. (*Id.* at p. 2 ¶ 10)

As noted above, the Debtor filed her bankruptcy petition in 2005 and retained NMM to represent her. Shortly thereafter, Olszewski retained NMM to represent Tuscany Bistro, Inc. in a suit against SAIC to recover insurance proceeds from the fire. (*Id.* at p. 2 ¶ 12) With that suit pending in state court, the chapter 7 Trustee filed the instant adversary proceeding in June 2007 seeking to recover any interest of the Debtor in the insurance settlement. The Trustee proceeded on the theory that a portion of the insurance proceeds belonged to the Debtor's estate as a result of the alleged fraudulent conveyance of the Debtor's interest in the restaurant to Olszewski.

On January 31, 2008, the Trustee and the Debtor entered into a Consent Order for a preliminary injunction that any recovery or settlement in the insurance litigation would be held in

Page 4
December 7, 2010

escrow by NMM until the Trustee was notified of the outcome and had an opportunity to pursue the Estate's interest in the settlement. (*Id.* at p. 2 ¶ 16). Schmidt drafted the Consent Order. The state court litigation was later settled for $150,000 and NMM advised the Trustee's attorneys of such on July 22, 2009. (*Id.* at p. 2 ¶ 17)  NMM, as plaintiff's counsel, paid its fees for the insurance litigation out of the escrowed funds. (Flanagan Cert., ¶ 13)

### C. The Alleged Conflict of Interest

By November 2009, with her funds exhausted, the Debtor undertook to represent herself *pro se* in this adversary proceeding. After assuming her own defense, the Debtor discovered Schmidt's role in the shareholder suit while at Teich Groh back in 2002. (*Id.* at p. 3 ¶ 19) Schmidt did not disclose his participation in that litigation when he undertook to represent the Debtor in her 2005 bankruptcy. (*Id.* at p. 3 ¶¶ 1-11)  The Debtor argues that "it was the core of the settlement of [the 2000 shareholder dispute] in which [Schmidt] was an adversary that [he] was now offering advice" to the Debtor. (*Id.* at p. 3 ¶ 19)  She further alleges that, as such, Schmidt had a conflict with the Debtor, Olszewski, and both successor entities to the Tuscany Grill. (*Id.* at p. 3 ¶ 20)

The Debtor asserts that the disclosure requirements and the corresponding disgorgement remedy in sections 327 and 328 of the Bankruptcy Code apply to her attorney-client relationship with NMM.  (*Id.* at p. 3 ¶ 1-11) According to the Debtor, Schmidt's failure to disclose his activities at Teich Groh amounted to a violation of §§ 327 and 328. (*Id.*)  The Debtor also asserts that the same conduct by Schmidt created a violation of RPC 1.7 and 1.8. (*Id.*) Accordingly, the Debtor now asks the Court to order NMM to disgorge all fees and expenses it received in connection with her representation.

### D. The March 1st Order for an Accounting of Fees

Finally, the Debtor notes that NMM failed to provide an accounting of its fees as ordered by this Court in its March 1st Order. (Debtor's Application in Supp. of Mot. for Contempt, ¶ 16) ("Contempt App.")  The Debtor joined in the Trustee's Motion to Compel an Accounting. (Debtor's Letter in Reply to NMM's Opp'n to Contempt, ¶ 5)  Therefore, the Debtor asserts that she is a "party in interest" with an independent right to the accounting. (*Id.*)

## II. NMM's Additional and Disputed Facts

### A. Schmidt and NMM's Relationship with the Debtor

First, NMM argues that 11 U.S.C. § 327 only applies to professionals retained by the trustee and not a debtor's attorney. (NMM's Br. in Opp'n to Mot. to Disgorge, pp. 1-2) ("NMM Br.")  Thus, the Debtor's relationship with NMM was governed by the RPC, not § 327. (*Id.*)

Page 5
December 7, 2010

NMM argues that it did not have a conflict of interest under RPC 1.7 and 1.8 when it represented the Debtor and that there is no basis for this claim. (*Id.*)

Schmidt notes that when he came to work at Teich Groh in 2000 he was an entry-level associate hired directly out of law school. (Schmidt Cert., ¶ 6) At the time of his hiring, Schmidt was the only associate in an office of approximately nine attorneys. (*Id.*) During his tenure at Teich Groh, Schmidt managed a voluminous workload, sometimes working on eight to ten briefs simultaneously, for different partners on different matters. (*Id.* at ¶ 7) He had no client contact and was not closely involved with any of the cases he worked on, aside from preparing pleadings and briefs. (*Id.*) Accordingly, Schmidt states that he had no recollection of his work on behalf of the Debtor's adversary in the 2002 shareholder suit at the time he undertook to represent her in the chapter 7 case in 2005. (*Id.* at ¶ 8) Schmidt states that he still had no recollection of his involvement in the shareholder suit after the Trustee commenced this adversary proceeding in 2007. (*Id.* at ¶ 9) In fact, at that time, Schmidt recommended Teich Groh to the Debtor as a firm that could represent Olszewski in the adversary proceeding, since the Trustee was alleging a fraudulent transfer of the Debtor's interest in the Tuscany Bistro to Olszewski. (*Id.*) Although the Debtor mentioned her conflict with Barry Frost of Teich Groh, who was the lead attorney in the shareholder suit, Schmidt still did not realize his prior involvement. (*Id.*) It was only after the Debtor e-mailed Schmidt in November 2009 that his memory was refreshed as to his involvement. (*Id.*) By that time, the Debtor had already assumed her *pro se* defense. (*Id.*)

      B.      **The Insurance Settlement and NMM's Fees**

As noted above, NMM paid itself fees for the insurance litigation out of the escrowed settlement funds in the summer of 2009. NMM was permitted to take this action pursuant to the January 31, 2008 Consent Order. (Flanagan Cert., ¶ 13) Schmidt advised the Trustee of this action and provided her with a disclosure of NMM's fees. (*Id.* at ¶ 15) NMM asserts that those fees were reasonable, as evidenced by an agreement between the firm and the Debtor, whereby NMM agreed to accept $11,000 less in fees than it was owed pursuant to retainer agreements. (*Id.* at ¶¶ 4-9) In sum, NMM alleges that its representation of the Tuscany Bistro in the insurance litigation resulted in a loss to the firm of over $108,000, due in large part to unbilled hours that were invested after the firm converted to a contingency arrangement. (*Id.* at ¶¶ 17-18)

      C.      **The Motion to Compel an Accounting**

On January 15, 2010, the Trustee filed the aforementioned motion to compel NMM to provide a formal accounting of its fees in the insurance litigation, suggesting that Schmidt's earlier disclosures were inadequate. (Cert. of Gary N. Marks in Opp'n to Debtor's Mot. for Contempt, ¶ 10) ("Marks Cert.") On January 29, 2010, while the motion was pending, the Trustee filed an Information Notice of Settlement ("Notice") regarding the adversary proceeding. Pursuant to the Notice, the Trustee was to be paid from the insurance settlement proceeds, in full

Page 6
December 7, 2010

and final settlement of her claims against the Debtor and her co-defendants, the sum of $44,000 and remit the remaining balance to the defendants. (*Id.* at ¶ 11) This Court approved the Trustee's proposed settlement as being in the best interests of the Estate. Following that hearing, Gary Marks of NMM met with Erin Kennedy, the Trustee's counsel, concerning the effect of the settlement on the March 1st Order compelling NMM to provide an accounting. (*Id.* at 14) Ms. Kennedy advised Mr. Marks that she no longer required an accounting and that she would not seek to enforce the Order against NMM. (*Id.*)

## **DISCUSSION**

### I.   Conflicts of Interest in Bankruptcy

#### A.   11 U.S.C. § 327 does not Apply to Debtor's Counsel

Section 327 of the Bankruptcy Code governs the retention of attorneys and other professionals by the trustee or debtor in possession, and mandates that all professionals must be approved by the Court. 11 U.S.C. § 327. The section prohibits the employment of persons who are not "disinterested." *Id.* Attorneys retained by a debtor, however, are not subject to the approval requirements of § 327. 3 COLLIER ON BANKRUPTCY ¶ 327.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Some courts have thus recognized that conflicts of interest involving a debtor's attorney should be resolved solely by local rules of professional conduct. *See In re Ray,* 314 B.R. 643, 653 (M.D. Tenn. 2004); *In re DiLoreto*, 277 B.R. 607, 613 (Bankr. E.D. Pa. 2000).

#### B.   Disclosure under Federal Rule of Bankruptcy Procedure 2014

Similarly, Rule 2014 mandates that: "An order approving the employment of attorneys . . . pursuant to § 327 . . . shall be made *only* on application of the *trustee or committee.* (emphasis added). Fed. R. Bankr. P. 2014. The rule requires applicants to disclose, "to the best of their knowledge," all facts and circumstances that could disqualify them from serving as a "disinterested person" in the bankruptcy case. *Id.* This is the mechanism by which courts enforce section 327.

#### C.   RPC 1.7 and 1.8

RPC 1.7 provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." N.J. RPC 1.7. The Rule states that a concurrent conflict exists if: "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." *Id.* RPC 1.8(b) provides that "a lawyer shall not use information relating

Page 7
December 7, 2010

to representation of a client to the disadvantage of the client unless the client after full disclosure and consultation, gives informed consent." N.J. RPC 1.8(b).

### D. Conflicts Analysis

The analysis under § 327 and the Rules of Professional Conduct is essentially the same. Bankruptcy courts have long been concerned with conflicts of interest on the part of attorneys appearing in the forum. The basic principles set forth by Justice Douglas, himself a bankruptcy expert, in *Woods v. City National Bank & Trust Co.*, 312 US 262, 85 L. Ed. 820, 61 S.Ct. 493 (1941) have remained largely unchanged for nearly seven decades. *See also In re Bernheim*, 1988 U.S. Dist. LEXIS 15494, *11-13 (D.N.J. Jan. 19, 1988). "'Reasonable compensation for services rendered' necessarily implies loyal and disinterested service [on behalf of the client]." *Woods,* 312 US at 268. Actual conflicting interests are barred and nothing further must be shown to support a complete denial of compensation. *Id.*

Courts have diverged since *Woods*, however, in their treatment of potential conflicts. "The general rule [is] that all fees are denied when a conflict is present, but the court should have the ability to deviate from that rule in those cases where the need for attorney discipline is outweighed by the equities of the case. This flexibility is supported by 11 U.S.C. § 328(c), which states that the court "may" (rather than "shall") deny compensation when counsel represents an interest adverse to the interest of the estate." *In re Watson Seafood & Poultry Co.*, 40 B.R. 436, 440 (Bankr. E.D.N.C. 1984). The Third Circuit has refused to adopt a *per se* rule of disqualification for potential conflicts. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476–77 (3d Cir. 1998).

"[O]nce a potential conflict is identified . . . it must be disclosed to the bankruptcy court." *B H & P INC.,* 949 F.2d 1300, 1317 (3d Cir. 1991). In the present case, however, the alleged conflict was not identified by either the Debtor or NMM until after the attorney-client relationship had been terminated. There is no evidence that NMM acted in other than good faith throughout its representation of the Debtor. The Court is unconvinced that the circumstances by which the alleged conflict arose are tantamount to anything approaching an actual conflict of interest. The Debtor did not suffer any harm as a result, nor does she present any evidence of impropriety or ineffectiveness on the part of NMM, beyond the conclusory statements contained in her briefs.

The Debtor cites several cases to support her proposition that disclosure requirements in Federal Rule of Bankruptcy Procedure 2014 should be strictly enforced, including in cases of *de minimis* connections or a wholly innocent failure to disclose. The Court finds these cases distinguishable for two reasons. First, Rule 2014, as noted above, applies only to professionals employed by the trustee or a committee, not to a debtor's attorney. Second, and more importantly, the various circuits have disagreed as to the degree of discretion given to courts in disqualifying attorneys and other professionals for scenarios that do not rise to the level of

Page 8
December 7, 2010

"actual conflict." *Bernheim*, 1988 U.S. Dist. LEXIS 15494 at *11-13. It is well known that the controlling law in the Third Circuit is that: when there is a potential conflict of interest, the court is within its discretion to disqualify an attorney and deny fees, although the court *may not* do so simply on the appearance of conflict alone. *Marvel*, 140 F.3d at 476 (emphasis added).

The Court finds no reason why the Third Circuit's analysis in *Marvel* concerning conflicts under § 327 should not also apply to a debtor's attorney. Other courts have noted the connection between §327 and sections expressly applicable to debtor's attorneys, such as §§ 329 and 330, which govern a debtor's transactions with attorneys and compensation for officers of the court, respectively. *See* 11 U.S.C. §§ 329 and 330; *Bernheim*, 1988 U.S. Dist. LEXIS 15494; *Barr v. Weber (In re Carousel Candy Co.)*, 38 Bankr. 927 (Bankr. E.D.N.Y. 1984); *In re Mattocks*, 15 B.R. 373, 386 (Bankr. E.D.N.Y. 1981) ("attorneys for debtors in bankruptcy proceedings are 'officers of the court and fiduciaries' . . . where attorneys fail to live up to their obligations as such officers and fiduciaries all fees received by them should be required to be returned. . . "). A "mere appearance of impropriety," however, does not equal a conflict of interest. *Marvel*, 140 F.3d at 477. "[H]orrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in [disqualification]." *Id.* (quoting *In re Martin*, 817 F.2d 175, 183 (1st Cir. 1987).

The alleged conflict in this case is remote at best. The shareholder litigation was settled approximately three (3) years before the Debtor retained NMM as bankruptcy counsel and approximately five (5) years before the settlement agreement in the insurance litigation. Significantly, Schmidt had a very limited and certainly not supervisory role at his prior law firm. By the time the Debtor filed for chapter 7 relief, she was no longer adverse to the plaintiff in the shareholder litigation, nor was Schmidt materially limited by any ongoing responsibilities to his former firm's client.

In 2002, Schmidt was an entry-level associate. His certification reflects a heavy work load drafting pleadings and briefs for multiple partners at the firm. Schmidt did not participate in ongoing litigation strategy or interact regularly with clients. The Court would be more inclined to consider a disgorgement of fees if there was evidence that Schmidt actively or knowingly failed to disclose his involvement to the Debtor, as limited as it was, or if he had retained some confidential information as a result of his work on the shareholder suit. Neither situation is reflected in the evidence. Schmidt's failure to disclose appears to be wholly innocent and there is no evidence that the Debtor was harmed as a result. The Court will deny the Debtor's motion seeking a disgorgement of fees.

**II.    Motion for Contempt**

As this Court previously held, "the following must be demonstrated by clear and convincing evidence" in order to hold a party in civil contempt: "(1) a valid court order exists; (2) the party had knowledge of the order; and (3) the defendant disobeyed the order." *In re*

Page 9
December 7, 2010

*Baldwin Real Estate Corp.*, 2008 Bankr. LEXIS 4615 (Bankr. D.N.J. Sept. 29, 2008) (citations omitted). Willful violation is not required, nor is good faith compliance a defense. *Id.* (citing *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 398 (3d. Cir. 1994)). A party may not be held in contempt, however, where the order is not clear, or when ambiguities exist as to the relief granted. *Id.* (citing *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995).

Despite the Debtor's intent to join in the Trustee's motion by her letter filed with the Court to that effect, the March 1st Order is specific and does not direct NMM to produce any records to the Debtor. The Order directs NMM to deliver records solely to the "Trustee's attorneys." As the Trustee was the legal representative of the bankruptcy estate and the accounting records, if produced, would have accrued to the benefit of the estate, NMM was reasonable in relying on the Trustee's release of the obligation ordered. Therefore, the Court does not find NMM in contempt and the Debtor's motion is hereby denied.

## CONCLUSION

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

Very truly yours,

*s/* *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure